STATE OF NORTH CAROLINA v. GEORGE IRVAN RIVENS

No. COA08-1042

(Filed 7 July 2009)

**1. Appeal and Error— preservation of issues—assignments of error—not supported by argument**

Assignments of error not supported by argument were deemed abandoned.

**2. Search and Seizure— presence of officers in yard— lawfulness**

The presence of police officers in defendant's yard, where they questioned and ultimately arrested him, was lawful where they entered the yard for the purpose of a general inquiry regarding a report that shots had been fired.

**3. Search and Seizure— frisk—justification**

A frisk was justified based upon an officer's reasonable and articulable suspicion of criminal activity where officers who were lawfully in defendant's yard noticed a bulge in defendant's shirt, the smell of marijuana on defendant, and defendant's mouth twitching nervously.

**4. Search and Seizure— consent to be searched—not coerced**

Defendant's consent to be searched was not coerced where no specific coercive acts were alleged beyond approaching defendant on his property to ask questions. Such actions were permissible for the officer and are not coercive in nature.

STATE v. RIVENS

[198 N.C. App. 130 (2009)]

**5. Sentencing— aggravating factor—juvenile admission of delinquency**

The trial court did not err when sentencing defendant for possession of cocaine with intent to sell or deliver by not dismissing the aggravating factor of a previous adjudication of delinquency. Although the evidence consisted of the transcript of admission and not the adjudication order, an admission of guilt by a juvenile has been held to be equivalent to a guilty plea, and constitutes acceptable grounds for the aggravating factor of being adjudicated delinquent.

Appeal by defendant from judgment entered 5 November 2007 by Judge David S. Cayer in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 February 2009.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Richard E. Slipsky, for the State.*

*Gilda C. Rodriquez, for defendant-appellant.*

JACKSON, Judge.

George Irvan Rivens ("defendant") appeals from his conviction of possession of cocaine with intent to sell or deliver. For the following reasons, we hold no error.

On 8 October 2005, the Charlotte-Mecklenburg Police Department ("CMPD") received an anonymous call for service. The caller stated that five males were on the side of Longleaf Drive, firing a gun. The caller described one as wearing a green shirt and one who had dreadlocks as wearing a white shirt. Officers Roberto Correa ("Officer Correa") and Michael Lowe ("Officer Lowe") arrived on the scene and saw a group of approximately five males standing on the lawn at 1629 Longleaf Drive. Two of the males matched the descriptions from the service call.

Officers Correa and Lowe approached the men to ask them about a gun's being fired. Officer Lowe interviewed one of the men, Christopher Burke ("Burke"). Burke consented to a pat down, and no weapons or contraband were found. Officer Correa approached the man in the white shirt with dreadlocks, identified as defendant. Officer Correa requested that defendant come over to him, but defendant declined, pointing to the house-arrest tracking device on his leg, indicating that he was not allowed to leave the property. As

Officer Correa approached defendant, he noticed defendant's right cheek twitching. Officer Correa also noticed that defendant's shirt was bunched in a way that possibly could conceal a weapon, and he smelled marijuana on defendant.

Officer Correa told defendant that he was investigating a report of gunshots. Officer Correa asked defendant if he had anything on him that Officer Correa should know about, and defendant responded that he did not. Officer Correa continued, asking defendant whether he had been smoking marijuana, and defendant did not respond. Officer Correa asked for defendant's consent to be searched. Defendant said, "Go ahead," and he raised his arms over his head. During this search, Officer Correa did not find a gun, but he did find a small bag in defendant's pocket which held four smaller baggies, each containing what appeared to be a rock of cocaine. These four rocks later were identified positively as 1.25 grams of cocaine. Officer Correa then arrested defendant. A more thorough search of defendant's person incident to his arrest revealed $50.00 cash in defendant's sock.

Defendant was tried on one count of possession of cocaine with intent to sell or deliver. On 29 December 2006, defendant filed a motion to suppress to exclude evidence obtained by the police when they made the stop at 1629 Longleaf Drive on 8 October 2005. On 30 October 2007, the trial court denied his motion. On 2 November 2007, a jury returned a guilty verdict at defendant's trial.

During sentencing, the State offered evidence that defendant previously had been adjudicated delinquent for an offense that would be a Class B2 felony if it had been committed by an adult. This evidence was presented as an aggravating factor to be considered in sentencing. Detective Gary L. McFadden ("Detective McFadden") of the CMPD testified concerning a homicide case he had investigated in 2000 and 2001. Detective McFadden stated that he was present when defendant made an admission of guilt in that case. Gladys L. Patterson ("Patterson") of the Mecklenburg County Clerk's Office testified as the custodian of defendant's juvenile records concerning these events. These records contained a Transcript of Admission by Juvenile, in which defendant admitted to the crime of second-degree murder. The Transcript of Admission was signed by defendant, the prosecutor, and the trial court. Patterson testified that the file ought to contain an Arraignment/Adjudication Order but that, for unknown reasons, the order was not in the file. The jury found that defendant previously had been adjudicated delinquent for an offense that would be a Class B2 felony if committed by an adult. The trial court sen-

tenced defendant to a twelve to fifteen-month term of imprisonment. Defendant appeals.

[1] Defendant first argues that the trial court erred in denying his motion to suppress concerning evidence gathered by the police on the night of the arrest. We disagree.

"Our review of a trial court's denial of a motion to suppress is strictly limited to a determination of whether [the trial court's] findings are supported by competent evidence, and in turn, whether the findings support the trial court's ultimate conclusion." *State v. Allison*, 148 N.C. App. 702, 704, 559 S.E.2d 828, 829 (2002) (citing *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982)). The trial court's conclusions of law are reviewed *de novo*. *State v. Haislip*, 362 N.C. 499, 500, 666 S.E.2d 757, 758 (2008) (citation omitted). When the trial court's findings of fact "are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal." *State v. Roberson*, 163 N.C. App. 129, 132, 592 S.E.2d 733, 735-36 (2004) (citing *State v. Baker*, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984)), *disc. rev. denied*, 358 N.C. 240, 594 S.E.2d 199 (2004).

On appeal, defendant fails to present arguments as to his assignments of error numbered 3 through 6. Accordingly, these assignments of error are abandoned, and the trial court's findings of fact challenged therein are deemed to be supported by competent evidence. *See* N.C. R. App. P. 28(b)(6) (2007); *Citizens Addressing Reassignment & Educ., Inc. v. Wake County Bd. of Educ.*, 182 N.C. App. 241, 245, 641 S.E.2d 824, 827 (2007).

[2] Defendant contends that Officers Correa and Lowe did not have sufficient reasonable suspicion to approach him in his yard. Defendant claims that (1) any probable cause that subsequently developed from Officer Correa's interaction with defendant was "fruit of the poisonous tree" and was therefore invalid; and (2) the consent given by defendant for Officer Correa to search him was not voluntary.

"Law enforcement officers have the right to approach a person's residence to inquire whether the person is willing to answer questions." *State v. Wallace*, 111 N.C. App. 581, 585, 433 S.E.2d 238, 241, *disc. rev. denied*, 335 N.C. 242, 439 S.E.2d 161 (1993) (citation omitted). "[W]hen officers enter private property for the purpose of a general inquiry or interview, their presence is proper and lawful. . . . '[O]fficers are entitled to go to a door to inquire about a matter; they are not trespassers under these circumstances.'" *State v. Church*, 110

N.C. App. 569, 573-74, 430 S.E.2d 462, 465 (quoting *State v. Prevette*, 43 N.C. App. 450, 455; 259 S.E.2d 595, 599-600 (1979), *disc. rev. denied*, 299 N.C. 124, 261 S.E.2d 925, *cert. denied*, 447 U.S. 906, 64 L. Ed. 2d 855 (1980)). Arriving at a home in order to perform an investigation and requesting to speak with the occupant does not constitute an "investigative stop," does not require an "articulable suspicion of criminal activity," and does not constitute a search or seizure. *See id.*; *see generally Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968).

In this case, Officers Correa and Lowe entered the yard—a lesser intrusion than entering the house or doorway—for the purpose of a general inquiry regarding a report that shots had been fired. Officer Correa approached defendant to conduct his inquiry, and defendant did not request that Officer Correa leave the premises. Notwithstanding defendant's house arrest and ankle bracelet, defendant was free to enter his home to avoid dealing with Officers Correa and Lowe. We hold the Officer's presence in the yard was lawful.

[3] After lawfully approaching defendant to conduct his inquiry, Officer Correa noticed a bulge in defendant's shirt, the smell of marijuana on defendant, and the nervous twitch of defendant's mouth. These observations may be considered by an officer in forming reasonable suspicion for a non-consensual search of a suspect pursuant to the plain view and plain smell rules. *United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981) (requiring that reasonable suspicion take into account "the totality of the circumstances"); *State v. Rigsbee*, 285 N.C. 708, 713, 208 S.E.2d 656, 660 (1974) ("if the officer is at a place where he has a legal right to be and if the item seized is in plain view[,]" then no unlawful search or seizure has occurred); *State v. Yates*, 162 N.C. App. 118, 589 S.E.2d 902 (2004) (detailing the "plain smell" rule analogous to the "plain sight" rule).

In this case, the smell of marijuana, bolstered by defendant's nervousness, was sufficient to create a reasonable and articulable suspicion of criminal activity. *See Cortez*, 449 U.S. 411, 66 L. Ed. 2d 621; *Terry*, 392 U.S. 1, 20 L. Ed. 2d 889; *State v. Buie*, 297 N.C. 159, 162-63, 245 S.E.2d 26, 28-29 (1979) (using nervousness as a factor supporting a reasonable suspicion of criminal activity). Therefore, the frisk was justified based upon Officer Correa's reasonable, articulable suspicion of criminal activity.

[4] After lawfully approaching defendant and taking note of suspicious facts concerning defendant, Officer Correa asked for defendant's consent to be searched. The trial court found as a fact—uncon-

STATE v. RIVENS

[198 N.C. App. 130 (2009)]

tested on appeal—that consent was given. Defendant now contests as a matter of law whether consent was given, suggesting obliquely that, in view of the totality of the circumstances, defendant was coerced into consenting.

"[E]ven when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage—provided they do not induce cooperation by coercive means." *State v. Campbell*, 359 N.C. 644, 663, 617 S.E.2d 1, 13 (2005) (quoting *United States v. Drayton*, 536 U.S. 194, 201, 153 L. Ed. 2d 242, 251 (2002)). In this case, no specific coercive acts are alleged beyond approaching defendant on his property to ask questions. As previously detailed, such actions were permissible for Officer Correa and are not coercive in nature. Accordingly, we hold the trial court's uncontested findings of fact support its conclusions of law concerning defendant's consent to be searched and the admission of evidence from the day of the arrest.

[5] Defendant further contends that the trial court erred in failing to dismiss the aggravating factor of previous adjudication of delinquency. We disagree.

Denial of a motion to dismiss an aggravating factor is a question of sufficiency of the evidence. Such an issue is a question of law which is reviewed *de novo*. *See State v. Bagley*, 183 N.C. App. 514, 519, 644 S.E.2d 615, 623 (2007). Evidence is sufficient to sustain a denial of a motion to dismiss "when, viewed 'in the light most favorable to the State' and giving the State 'every reasonable inference' therefrom, there is substantial evidence 'to support a [jury] finding[.]' " *Id.* at 522-23, 644 S.E.2d at 621 (quoting *State v. Locklear*, 322 N.C. 349, 358, 368 S.E.2d 377, 383 (1988)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991) (quoting *State v. Smith*, 200 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)).

The motion to dismiss at issue here concerns an aggravating factor rather than a criminal charge. However, the evidentiary standard of "beyond a reasonable doubt" applies to the sentencing portion of a criminal proceeding. N.C. Gen. Stat. § 15A-1340.16(a1) (2007). The judge's role in determining which arguments to allow a jury to hear is the same in both aspects of a criminal case. *See State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). Therefore, we apply the same analysis.

At trial, evidence was presented to the jury concerning defendant's juvenile admission of delinquency, which was accepted by the juvenile court on 26 March 2001. This evidence consisted of both the Transcript of Admission by Juvenile and a witness to defendant's admission while defendant was still a juvenile.

In brief summary, there are three steps in the procedure for processing a juvenile who admits to the charges against him: (1) a Transcript of Admission by Juvenile is completed and is accepted by the juvenile court, showing that the admission was acquired appropriately, with a factual basis for the charges and with the juvenile being fully informed (analogous to a guilty plea); (2) a Juvenile Adjudication Order is filled out, where the juvenile court finds the juvenile delinquent (analogous to an entry of judgment); (3) a Disposition/Commitment Order is filled out, in which the time for which the juvenile will be committed is determined and recorded (analogous to sentencing). *See In re T.H.T.*, 362 N.C. 446, 449, 665 S.E.2d 54, 56 (2008); N.C. Gen. Stat. § 7B-807 (2007); N.C. Gen. Stat. § 7B-905 (2007); N.C. Gen. Stat. § 7B-2407 (2007).[1]

In this case, the Juvenile Adjudication Order is missing, without explanation, from defendant's juvenile case file, and the Disposition/Commitment Order was not allowed into evidence by the trial court. At the time of the juvenile court's acceptance of the Transcript of Admission by Juvenile, defendant had not yet been adjudicated delinquent by the court. Patterson testified that a Transcript of Admission does not constitute a juvenile adjudication. It is not until the proceedings continue that actual adjudication occurs.

However, "[f]or the purpose of imposing [a] sentence, a person has been convicted when he has been adjudged guilty *or has entered a plea of guilty* or no contest." N.C. Gen. Stat. § 15A-1331(b) (2007) (emphasis added). "We have interpreted N.C. Gen. Stat. § 15A-1331(b) to mean that formal entry of judgment is not required in order to have a conviction." *State v. Hatcher*, 136 N.C. App. 524, 527, 524 S.E.2d 815, 817 (2000) (citing *State v. Fuller*, 48 N.C. App. 418, 268 S.E.2d 879, *disc. rev. denied*, 301 N.C. 403, 273 S.E.2d 448 (1980)); *see also State v. Canellas*, 164 N.C. App. 775, 778, 596 S.E.2d 889, 891 (2004).

[A] defendant's guilt can only be established by a properly entered and accepted plea of guilty or of no contest, or by the verdict of

---

1. There have been no relevant changes to these laws or to the time line of juvenile proceedings since defendant's juvenile proceeding in 2001.

a jury. Absent a plea of guilty or of no contest, guilt can never be established by judgment of the court, but only by a verdict of the jury. However, in returning a verdict of guilty, it is sometimes said that the jury "adjudged" the defendant guilty. It was in this sense that the legislature used the word "adjudged" in G.S. 15A-1331(b). We conclude, and so hold, that by use of the word "adjudged" in G.S. 15A-1331(b) with respect to determining when a defendant has been "convicted" of an offense, the legislature was not referring to the formal entry of judgment by the court but rather to the return by the jury of a verdict of guilty.

*State v. Fuller*, 48 N.C. App. 418, 420, 268 S.E.2d 879, 881, *disc. rev. denied*, 301 N.C. 403, 273 S.E.2d 448 (1980).

An admission of guilt by a juvenile, like that recorded in a Transcript of Admission, has been held by this Court and by the North Carolina Supreme Court to be "equivalent to a guilty plea in a criminal case[.]" *In re T.E.F.*, 167 N.C. App. 1, 4, 604 S.E.2d 348, 350 (2004) (quoting *In re Chavis*, 31 N.C. App. 579, 581, 230 S.E.2d 198, 200 (1976)), *aff'd*, 359 N.C. 570, 575, 614 S.E.2d 296, 299 (2005); *cf. State v. Boyce*, 175 N.C. App. 663, 669, 625 S.E.2d 553, 557 (2006), *aff'd and disc. rev. improvidently allowed in part*, 361 N.C. 670, 651 S.E.2d 879 (2007); *but see State v. Yarrell*, 172 N.C. App. 135, 142, 616 S.E.2d 258, 263 (2005) (holding that adjudications, unlike criminal convictions, must be found by a jury beyond a reasonable doubt before being used as an aggravating factor), *disc. rev. improvidently allowed*, 360 N.C. 473, 628 S.E.2d 380 (2006). While there are differences between juvenile delinquency cases and criminal cases, an admission carries with it the same protections and implications as a guilty plea. *See In re T.E.F.*, 167 N.C. App. at 4, 604 S.E.2d at 350. A significant difference between juvenile proceedings and criminal proceedings is the increase in the protections afforded to juveniles. *Id.* The effect of the juvenile offense upon the case at bar is that of an aggravating factor, thereby increasing the punishment of the adult crime. As defendant in this case is no longer a juvenile and is being punished here for a crime he committed as an adult, we are not concerned with additional protections which may be afforded to juveniles in this instance.

Here, the State presented evidence sufficient to support a jury verdict that defendant admitted to the offenses brought against him in juvenile court. Such an admission constitutes acceptable grounds for the aggravating factor of being adjudicated delinquent.

STATE EX REL. JOHNSON v. EASON

[198 N.C. App. 138 (2009)]

For the foregoing reasons, we discern no error in the trial below.

No error.

Judges STEPHENS and STROUD concur.